UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CIC GROUP, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:21CV1416 JCH |
| ) | |
| AECOM ENERGY & CONSTRUCTION, ) | |
| INC., f/k/a URS ENERGY & ) | |
| CONSTRUCTION, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss and to Compel Arbitration, filed January 10, 2022. (ECF No. 23). The motion is fully briefed and ready for disposition.

**BACKGROUND**

Wisconsin Power and Light Company, a subsidiary of Alliant Energy Corporation ("Alliant"), retained Defendant AECOM Energy & Construction, Inc., f/k/a URS Energy & Construction, Inc. ("AECOM" or "Defendant") as the engineering, procurement, and construction firm to engineer, procure, construct, commission, and start-up a combined-cycle generating station in Beloit, Wisconsin, as part of Alliant's Riverside Energy Center Expansion Project (the "Project"). (Defendant's Memorandum in Support of its Motion to Dismiss and Compel Arbitration ("Defendant's Memo in Support"), P. 2). The Project required, among other things, the procurement and installation of two heat recovery steam generators ("HRSGs"). (*Id.*).

Nooter/Ericksen, Inc. ("N/E"), a subsidiary of Plaintiff CIC Group, Inc. ("CIC" or "Plaintiff"), is in the business of supplying HRSGs and related equipment and services. (Defendant's Memo in Support, P. 2).  On or about August 3, 2016, AECOM and N/E executed a $37 million purchase order (the "N/E Purchase Order"), under which N/E agreed to fabricate, furnish, and deliver to the Project specified goods and services including, among other things, two HRSGs, HRSG-associated large-bore and small-bore piping, related instrumentation and equipment, and control logic.  (*Id.*, PP. 2-4).  Exhibit C to the N/E Purchase Order set forth various General Conditions, including a provision regarding dispute resolution which provided in relevant part as follows:

> The Parties[1] shall attempt in good faith to resolve all Disputes promptly by negotiation, as follows.  Either Party may give the other Party written Notice of any Dispute not resolved in the normal course of business. Executives of both Parties at levels one level above the Parties' personnel who have previously been involved in the Dispute shall meet at a mutually acceptable time and place within ten (10) Business Days after delivery of such Notice….If the matter has not been resolved within thirty (30) Days from the referral of the Dispute to senior executives, or if no meeting of senior executives has taken place within fifteen (15) Business Days after such referral, either Party may initiate mediation as provided hereinafter….In the event that any Dispute arising out of or relating to the Purchase Order Documents is not resolved in accordance with the procedures set forth in this Article, such Dispute shall be decided by arbitration as set forth below….All claims, Disputes, and other matters in question not resolved by mediation between the Parties to the Purchase Order arising out of or relating to the Purchase Order Documents or the breach thereof shall be decided by arbitration by the American Arbitration Association ("AAA") (at the regional office closest to Owner's headquarters) or by a mutually agreed upon arbitrator….This agreement to arbitrate and any other agreement or consent to arbitrate entered into in accordance herewith will be specifically enforceable under the prevailing arbitration law of any court having jurisdiction….Either Party may join any other interested parties.

---

[1] "Parties" are defined as Buyer and Seller, *i.e.*, AECOM and N/E.  (*See* ECF No. 24-2, P. 2).

(*See* ECF No. 24-2, P. 15). In both the N/E Purchase Order itself and the General Conditions, N/E and AECOM agreed that Wisconsin law would govern the N/E Purchase Order and any disputes relating thereto. (*See* ECF Nos. 24-1, P. 10; 24-2, P. 16).

The N/E Purchase Order provided that "[i]n lieu of 100% payment/performance bond, Seller [N/E] will provide a Parent guarantee." (*See* ECF No. 24-1, P. 14). On September 8, 2016, CIC executed the following Parent Company Guarantee:

> With respect to AECOM Purchase Order No. 31845-005-15-6-530-PO entered into and subject to any and all liability limits in said purchase order, the undersigned, CIC Group, Inc., guarantees the performance by Nooter/Eriksen, Inc. of its obligations (including payment obligations) under the purchase order, and if, for any reason whatsoever and in any way, the subsidiary Nooter/Eriksen, Inc. shall fail to perform the same then we shall take over from the subsidiary and shall forthwith perform and observe or cause to be performed and observed such obligations so far and to the extent that the subsidiary is liable to perform and observe them under the terms of the purchase order.

(*See* ECF No. 24-3). The Parent Company Guarantee was not among the documents expressly made a part of the N/E Purchase Order. (*See* ECF No. 24-1, P. 6).

During the Project, numerous disputes arose between N/E and AECOM. (Defendant's Memo in Support, P. 4). On November 9, 2021, AECOM filed an Arbitration Demand against both N/E and CIC. (*Id.*). As to CIC, AECOM's claims were based upon the CIC Guarantee, and alleged that because N/E had failed to perform under the N/E Purchase Order, CIC was contractually required as guarantor of N/E's contractual obligations and liabilities under the N/E Purchase Order to step into N/E's shoes and fulfill all of N/E's obligations and liabilities. (*Id.*, P. 5).

On December 2, 2021, Plaintiff filed its Complaint for Declaratory Judgment in this Court, seeking a ruling that (a) CIC and AECOM have not entered into any valid and enforceable arbitration agreement, and (b) CIC cannot lawfully be compelled to arbitrate any claims asserted

against it by AECOM in currently pending arbitration proceedings. (ECF No. 1). As noted above, Defendant filed the instant Motion to Dismiss and to Compel Arbitration on January 10, 2022. (ECF No. 23). Specifically, Defendant asserts (1) that CIC is required to arbitrate its obligations as guarantor of N/E's performance under the N/E Purchase Order, and (2) that CIC is legally obligated to arbitrate as a direct beneficiary of the N/E Purchase Order.[2]

## DISCUSSION

Section 2 of the Federal Arbitration Act states that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects the strong federal policy favoring arbitration. *AT & T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011). Because "arbitration is a matter of contract,….courts must rigorously enforce arbitration agreements according to their terms." *American Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal quotation marks and citations omitted). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983). However, "although the case law frequently refers to a general presumption of arbitrability, [the Court] construe[s] this presumption as attaching only *after* the court determines that an arbitration agreement between the parties actually exists." *Mayer v. Soik*, No. 2020AP199, 2021 WL 3073073, at *4 (Wis. App. Jul. 21, 2021) (emphasis in original) (citations omitted). *See also Grundstad v. Ritt*, 106 F.3d 201, 204 (7th Cir. 1997) (internal quotation marks and citations omitted) "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to arbitrate.").

---

[2] In its motion, Defendant asserts that Wisconsin law applies to the instant dispute. Plaintiff counters that Missouri law applies, and so the Court addresses both in this Order.

4

"[W]hen deciding whether to compel arbitration, a court asks whether a valid agreement to arbitrate exists, and if so, whether the dispute falls within the scope of that agreement." *Newspaper Guild of St. Louis, Local 36047 v. St. Louis Post Dispatch, LLC,* 641 F.3d 263, 266 (8th Cir. 2011) (citation omitted). "A court must grant a motion to compel arbitration if a valid arbitration clause exists which encompasses the dispute between the parties." *3M Co. v. Amtex Security, Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008) (citations omitted).

I. **Guarantor Obligations**

In its Motion to Compel Arbitration, Defendant first asserts Plaintiff should be required to arbitrate its obligations as guarantor of N/E's performance under the purchase order. As noted above, "[a]rbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." *Dunn Indus. Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 435 (Mo. banc 2003) (citing *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 242 F.3d 777, 780 (8th Cir. 2001)). As such, a guarantor who is not a signatory to a contract containing an arbitration clause generally is not bound by the arbitration clause. *Id.* (citing *Grundstad*, 106 F.3d at 204). "However, in a majority of state courts, including Missouri, due to the strong federal policy in favor of arbitration, arbitration agreements are enforced against guarantors or sureties where the arbitration agreement is incorporated by reference into the guaranty or performance bond." *Id.* (citations omitted).

In this case, Plaintiff's guarantee refers to the N/E Purchase Order, and provides that should N/E fail to perform then Plaintiff "shall take over from the subsidiary and shall forthwith perform and observe or cause to be performed and observed such obligations so far and to the extent that the subsidiary is liable to perform and observe them under the terms of the purchase

5

order."  The guarantee does not, however, incorporate by reference the N/E Purchase Order.[3] "Mere reference to the [N/E Purchase Order] in the guaranty is insufficient to establish that [Plaintiff] bound itself to the arbitration provision of the [N/E Purchase Order]."  *Dunn Indus. Group,* 112 S.W.3d at 436 (citation omitted).  Plaintiff thus is not required to arbitrate the claims raised by Defendant against it under the guarantee.  *Id*.  *See also Morrie Mages and Shirlee Mages Found. v. Thrifty Corp.*, 916 F.2d 402, 406 n. 1 (7th Cir. 1990) (internal quotation marks and citation omitted) ("Thrifty's alternative claim that it is entitled to a stay because it is a party to the arbitration agreement is belied by the record.  The Guaranty does not contain an arbitration clause and does not incorporate the arbitration provision of the Agreement between the Mages and MC.  A mere guarantor of a charter party generally cannot be compelled to arbitrate on the basis of an arbitration clause in the main agreement since it is not a party to that contract…; ordinary contract principles determine who is bound.").[4]

## II.  Direct Beneficiary Status

Defendant next asserts Plaintiff should be compelled to arbitrate as it was a direct beneficiary of the N/E Purchase Order, and thus is estopped from avoiding the arbitration provisions contained therein.  Under Missouri law, "[t]o be bound as a third-party beneficiary, the terms of the contract must clearly express intent to benefit that party or an identifiable class

---

[3] This fact distinguishes the instant case from *Exchange Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274 (6th Cir. 1984), as in that case the performance bond specifically incorporated the Subcontract, and the Subcontract in turn specifically incorporated by reference the General Contract (which contained the arbitration requirement).  *See Id.* at 275-76.

[4] As noted above, in its motion Defendant asserts Wisconsin law should apply to the instant dispute.  The sole case out of Wisconsin cited by Defendant is not to the contrary, however.  Rather, the Court in *Mayer v. Soik* distinguishes the scenario before it, where a nonsignatory to a franchise agreement sought to enforce an arbitration provision contained therein, from the one here, in which a signatory attempts to enforce an arbitration agreement against a nonsignatory.  *See Mayer*, 2021 WL 3073073, at *6 n. 10 (internal quotation marks and citation omitted) ("Courts, however, are generally more hesitant to bind an unwilling nonsignatory to arbitration…It matters whether the party resisting arbitration is a signatory or not…A court should be wary of imposing a contractual obligation to arbitrate on a non-contracting party.").

6

of which the party is a member." *Nitro Distributing, Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006) (citation omitted).

> In cases where the contract lacks an express declaration of that intent, there is a strong presumption that the third party is not a beneficiary and that the parties contracted to benefit only themselves. Furthermore, a mere incidental benefit to the third party is insufficient to bind that party.

*Id.* (internal citations omitted). Wisconsin law is similar. *See Schilling by Foy v. Employers Mut. Cas. Co.*, 569 N.W.2d 776, 780 (Wis. App. 1997) (citations omitted) ("Although the general rule is that only a party to a contract may recover under it, there is an exception for a contract specifically made for the benefit of a third person. The person claiming to be a third party beneficiary must show that the contract was entered into by the parties to the contract directly and primarily for the benefit of the third party. An indirect benefit incidental to the contract is not sufficient. The contract must indicate that the third party either was specifically intended by the contracting parties to benefit from the contract, or is a member of a class the contracting parties intended to benefit.").

Upon consideration, the Court finds the N/E Purchase Order did not expressly indicate an intention to benefit Plaintiff, "and any benefit obtained from the agreement, if at all, was incidental." *Nitro Distributing, Inc.*, 194 S.W.3d at 345. Under these circumstances, Plaintiff is not a third-party beneficiary of the N/E Purchase Order, and thus will not be compelled to arbitrate thereunder.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss and to Compel Arbitration (ECF No. 23) is **DENIED**.

Dated this 22nd Day of March, 2022.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE